CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 07 2024

LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal Action No. 7:24-cr-00012-002 |
| ) | |
| v.  ) | **MEMORANDUM OPINION** |
| ) | |
| GARRETT ISAAC WILLIAMS, ) | By:   Hon. Thomas T. Cullen |
| ) |          United States District Judge |
| Defendant.  ) | |

Following his arrest, Defendant Garrett Isaac Williams was taken before a magistrate judge for his first appearance with his hands and feet shackled. He asked the magistrate judge to direct the U.S. Marshals Service to remove his handcuffs for his court appearance and later detention hearing. The magistrate judge denied Williams's motions to unshackle his hands at both proceedings. She concluded that the Marshals' concerns about courtroom security and the relevant case law mandated this result. Williams timely objected to that decision. For the reasons explained below, the court concludes that the magistrate judge's refusal to order that Williams's hands be unshackled was neither contrary to existing law nor clearly erroneous. But fundamental constitutional concerns and intradistrict consistency require a different approach going forward.

I.      RELEVANT BACKGROUND

At the time of his preliminary court appearances, Williams, like all in-custody defendants in the Roanoke Division of the Western District of Virginia, was fully restrained. Both of his hands were coupled in front of his body and attached—by a metal chain—to a security belt affixed to his waist. A second, longer chain ran from that security belt to a set of shackles on his ankles.

According to Williams, this elaborate security apparatus severely limited his movements, as it does for all similarly situated defendants. Because his hands were essentially bound together and tethered by a short lead to his waist, Williams was forced to assume an awkward stooped posture when the courtroom deputy directed him to raise his hand to take the oath. The handcuffs also made it difficult for Williams to sign various court documents and virtually impossible to take notes during his detention hearing, which lasted several hours. (*See* Def.'s Objs. at 1–3 [ECF No. 51].)

More broadly, Williams complains that the U.S. Marshals Service has not followed its purported shackling policy consistently. He points out that, until recently, Deputy U.S. Marshals in the Roanoke Division followed a practice of bringing defendants into the courtroom in full restraints, but they typically released one hand from the metal cuffs at the outset of the hearing to allow defendants to swear the oath, sign documents, and take notes. Apparently, this practice changed within the past few months—at least for preliminary hearings in front of the Roanoke magistrate judge—to routine full-body shackling. According to Williams, Roanoke deputies now refuse to free even one hand from the restraint system, and they will only do so if ordered by the court following a successful motion from defense counsel.[1] Williams further contends that this rigid no-unshackling policy is arbitrary and capricious insofar as, in his attorney's experience, deputies in other court divisions still release *at least* one of the defendant's hands at most hearings.[2] (Def.'s Objs. at 1–3.)

---

[1] Williams made such a motion, but the magistrate judge denied it. (ECF Nos. 14, 30.) It is that denial to which Williams now objects.

[2] The court notes that, in the Harrisonburg Division where the court regularly presides, deputies remove both handcuffs prior to the hearing without being prompted by the attorneys or the court.

In its written response to Defendant's objection, the government submits that it will defer to this court's decision on whether Williams should be partially unrestrained at future non-trial proceedings. But the government encourages the court to make this decision in consultation with the Marshals and after considering Williams's "dangerousness."[3] (Gov't Opp'n at 1–2 [ECF No. 53].) The government pushes back on Williams's argument that he has a constitutional right to appear unshackled at all court hearings, noting that there is no binding or persuasive authority supporting that position. The government adds that it would be overly burdensome to require the presiding judge to make individualized risk determinations related to shackling.[4] (*Id.* at 5–6.)

## II.   ANALYSIS

### A. Standard of Review

When a party objects to a magistrate judge's decision on a non-dispositive motion, the court must "modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). An order is "contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *In re Eli Lilly & Co.*, 580 F. Supp. 3d 334, 337 (E.D. Va. 2022) (internal quotations omitted). It is "clearly erroneous when . . . 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Indivior Inc.*, No. 1:19-cr-00016, 2020 WL 616167,

---

[3] To be sure, Williams is alleged to have committed violent offenses. He is currently charged with participating in a conspiracy to distribute and to possess with the intent to distribute marijuana, conspiring to commit an armed robbery of a rival marijuana dealer, and participating in that armed robbery. (*See generally* Indictment [ECF No. 3].)

[4] The court elected not to hold a hearing on Williams's instant objections, given the discrete nature of the issue presented and the parties' excellent briefing.

at *2 (W.D. Va. Feb. 10, 2020) (quoting *Minyard Enters., Inc. v. Se. Chem. & Solvent Co.*, 184 F.3d 373, 380 (4th Cir. 1999)).

### B. Right to be Free of Unwarranted Restraints

Our Constitution and common law have long prohibited the use of visible restraints on a criminal defendant during the guilt phase of his trial without good cause. *See* 4 William Blackstone, Commentaries *317 (citing the "ancient" common law rule that a defendant must be "brought to the bar without irons, or any manner of shackles or bonds . . . unless there be evident danger of an escape"); *Illinois v. Allen*, 397 U.S. 337, 343–44 (1970) (concluding that shackling during trial may be necessary for the rare "obstreperous defendant," but recognizing that "the sight of shackles . . . might have a significant effect on the jury's feelings about the defendant"); *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986) (noting that. "shackling" is "an inherently prejudicial practice" that is permissible *only* when the court determines it is necessary); *see also Estelle v. Williams*, 425 U.S. 501, 512–13 (1976) (holding it unconstitutional to "compel an accused to stand trial before a jury while dressed in identifiable prison clothes"). More recently, in *Deck v. Missouri*, the Supreme Court held that the Constitution also prohibits visible restraints during the sentencing phase of a bifurcated jury trial, "unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. 622, 624 (2005) (quoting *Holbrook*, 475 U.S. at 568-69). In considering possible justifications for shackling during either the guilt or sentencing phase of a trial, the Court concluded that judges may "take into account the factors that courts have traditionally relied on in gauging potential security problems and the risk of escape at trial." *Id.* at 629. "But any such determination must be case specific; that is to say, it should reflect

particular concerns, say, special security needs or escape risks, related to the defendant on trial." *Id.* at 633. Although the Court in *Deck* was primarily concerned with the prejudicial effect to the defendant of having the jury see his bound hands, it pointed to three additional justifications for a shackling prohibition: (1) the presumption of innocence; (2) the Sixth Amendment's right to counsel and a criminal defendant's attendant right to aid in his own defense; and (3) the need to maintain the overall dignity of the court proceeding. *Id.* at 630–31.

Since *Deck*, criminal defendants have occasionally relied on these additional justifications as grounds to object to being shackled at non-jury court proceedings. For instance, in *United States v. LaFond*, the defendant protested when the presiding district judge ordered that his hands remain shackled during his sentencing. 783 F.3d 1216, 1221 (11th Cir. 2015). The defendant argued—first to the district court and then on appeal—that shackling, even at a non-jury proceeding, was unwarranted, undignified, and prejudicial to his right to participate in his defense. *Id.* at 1225. Applying the rule of *Deck*, the Eleventh Circuit summarily rejected these arguments, concluding that the prohibition on shackling "pertains only to a jury trial . . . not …to a sentencing hearing before a district judge." *Id.* To buttress its holding, the court cited William Blackstone for the proposition that the "ancient English rule" prohibiting shackles only applied at trial. *Id.* (cleaned up).

Two years later, the Ninth Circuit, sitting *en banc*, reached a different conclusion. In *United States v. Sanchez-Gomez*, the court reviewed a district-wide policy requiring the shackling of criminal defendants during all pretrial hearings. 859 F.3d 649, 653 (9th Cir. 2017), *vacated on other grounds*, 584 U.S. 381 (2018). Writing for the majority, Judge Kozinski started his analysis

with *Deck*, seizing on what he characterized as the "three constitutional anchors" identified by the Supreme Court as critical to its holding prohibiting the use of shackles without an individualized justification. *Id.* at 660. The court noted that these anchors—the presumption of innocence, the right to counsel and to participate in one's own defense, and the dignity and decorum attendant to the judicial process—apply at all stages of the criminal-justice process, regardless of whether a jury is present. *See id.* at 660–61.

Accordingly, the court concluded that presiding judges needed to make individualized threat determinations before shackling a defendant during *any proceeding*, including pretrial hearings and sentencings. *Id.* In explaining its expansion of the *Deck* rule, the court noted:

> This right to be free from unwarranted shackles no matter the proceeding respects our foundational principle that defendants are innocent until proven guilty. The principle isn't limited to juries or trial proceedings. It includes the perception of any person who may walk into a public courtroom, as well as those of the jury, the judge[,] and court personnel. A presumptively innocent defendant has the right to be treated with respect and dignity in a public courtroom, not like a bear on a chain.

*Id.* at 661.The court went on to explain that this right of a criminal defendant to be free from unwarranted shackling emanated from the Due Process Clause, which "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 662 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).

The court also noted that this American constitutional protection from unwarranted shackling was consistent with English common law. On this score, the court took issue with the Supreme Court's "dicta" in *Deck* that the common law "drew a distinction between trial

and pretrial proceedings when applying the right." *Id.* at 663. Surveying a broader range of authoritative common-law treatises to trace the origins of this right than the majority had in *Deck*, the Ninth Circuit concluded that, in fact, "early commentators didn't draw the bright line between trial and arraignment that the *Deck* court seemed to believe they did." *Id.* The court concluded that, at common law, the shackling of defendants at pretrial hearings (like arraignments) was sometimes permissible, but only "after a showing of need." *Id.* at 664.

The government appealed *Sanchez-Gomez* to the Supreme Court. *See United States v. Sanchez-Gomez*, 584 U.S. 381 (2018). Without addressing the issue of pretrial shackling on the merits, the Court considered whether the case itself was moot. *Id.* at 383. Since the criminal proceedings against the named defendants who were shackled during their pretrial proceedings had ended by the time the Ninth Circuit issued its decision, the Court held that the appeal was moot and did not fall into any exception to the mootness doctrine. *Id.* at 391–94. It thus vacated the decision without addressing the core constitutional issue.

### C. Applying *Deck's* "Three Constitutional Anchors"

Here, Williams argues that *Deck*'s "three constitutional anchors," as the Ninth Circuit characterized them, secure a broader right of a pretrial detainee to appear unshackled, unless the presiding judge makes an individualized determination to the contrary. (Def.'s Objs. at 4.) Although this court agrees with that proposition, it cannot fault the magistrate judge for concluding otherwise. As noted above, the Supreme Court in *Deck* ultimately cabined its decision to criminal defendants facing jury sentencings. 544 U.S. at 624. The Ninth Circuit's opinion in *Sanchez-Gomez* was vacated on mootness grounds, and the only other appellate decision analyzing the contours of the right of a criminal defendant to remain unshackled post-

*Deck*—the Eleventh Circuit's decision in *LaFond*—squarely rejected the notion that this right extended to sentencing hearings before judges. Given this, the court cannot conclude that the magistrate judge's decision was contrary to existing law or clearly erroneous within the meaning of Rule 59(a).

But after carefully reviewing this case law, this court would be remiss if it didn't state its firm conviction that a broader, qualified right of a criminal defendant to be unshackled exists and should be recognized at non-jury proceedings. As Judge Kozinski explained in *Sanchez-Gomez*, a fair reading of *Deck* leads to that ineluctable conclusion. In recognizing the qualified right of a criminal defendant to appear unshackled before a jury, the Supreme Court did not foreclose the possibility that this right might apply more broadly. If anything, it implied that it would. The Court specifically pointed to the presumption of innocence, the Sixth Amendment's right to counsel, and the dignity and decorum attendant to the judicial process to justify its holding. *Deck*, 544 U.S. at 630–31. While those considerations are perhaps more "weighty" in a jury's presence, *id.* at 633, they are also crucial outside the jury's presence. In fact, these core tenets undergird our criminal-justice system in its entirety. Logic and common-sense, therefore, dictate that these rights provide for reasonable restrictions on the use of shackles at pretrial hearings.[5]

---

[5] Indeed, this conclusion is bolstered by Blackstone's commentary on the common law's treatment of pretrial detainees in the 1700s:
> Upon the whole, if the offence be not bailable . . . , he is to be committed to the county goal by the mittimus of justice . . . ; there to abide till delivered by due course of law. But this imprisonment . . . is only for safe custody, and not for punishment: therefore, *in this dubious interval between the commitment and trial, a prisoner ought to be used with the utmost humanity; and neither be loaded with needless fetters*, or subjected to other hardships than such as are absolutely requisite . . . . [T]he law will not justify . . . fettering a prisoner, unless where he is unruly, or has attempted an escape.

4 Blackstone, *supra*, *297 (emphasis added).

Core Due Process protections kick in long before a jury is empaneled. The presumption of innocence, for instance, attaches at the time criminal charges are filed. *See Coffin v. United States*, 156 U.S. 432, 453 (1895). Thus, when a defendant, like Williams, appears before a magistrate court for his initial appearance, arraignment, and detention hearing, this presumption applies to the same degree at that hearing as it does at the later trial. The same is true for his Sixth Amendment right to counsel and the corollary right to aid counsel in his defense. It is well-established that a criminal defendant is afforded these protections by the time of his arraignment and detention hearings. *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 213 (2008). Indeed, the Sixth Amendment's right to counsel—and the attendant right to assist counsel in one's defense—is essential at a detention hearing. The outcome of this full-blown evidentiary proceeding determines whether a defendant will be allowed to remain free pending trial, or if he will be held, despite the presumption of innocence, pending adjudication of guilt and sentencing—a process that typically takes a year, or more.

Williams's hands remained shackled during his detention hearing, which lasted several hours, so he was unable to take or pass notes to his attorney. (*See* Def.'s Objs. at 1.) Although the court is dubious that this effected the ultimate outcome, given the seriousness of the allegations and his prior criminal record, that is beside the point. The Sixth Amendment recognizes the fundamental rights of a criminal defendant to aid in his defense and communicate with his lawyer. Taking and passing notes at an evidentiary hearing is one of the few meaningful ways that a criminal defendant can exercise these rights, and the court should facilitate this to the extent possible—or at least not impede it by permitting the routine

shackling of both hands absent some individualized showing of need.[6]

The dignity and decorum of the judicial process also support expanding the right of a criminal defendant to have at least one hand free at pretrial proceedings. Frog marching a defendant to the podium like a veritable member of a chain gang and watching him contort his body to raise a shackled hand barely high enough to take the oath undermine these objectives.[7] This is true whether a jury is present, or not. As the court noted in *Sanchez-Gomez*:

> How the justice system treats people in these public settings matters for the public's perception, including that of the defendant. Practices like routine shackling and "perp walks" are inconsistent with our constitutional presumption that people who have not been convicted of a crime are innocent until proven otherwise.

859 F.3d at 665.

Finally, the court cannot overlook the fact that, in other court divisions within this district, the Marshals routinely release a defendant's hand from their restraints prior to every court proceeding. Even deputies in the Roanoke Division seemed to follow a similar policy until recently. The disparate nature of these shackling practices within the same judicial district undercuts the notion that courtroom security justifies the most-restrictive approach. If nothing else, defendants should not be treated differently based on where they happen to appear for court hearings.

---

[6] The same is true of sentencing hearings. Even though a defendant is no longer presumed innocent at this stage of the proceeding, his Sixth Amendment rights remain intact.

[7] Or, as one judge put it nearly a decade before *Deck* was decided: "The fact that the proceeding is non-jury does not diminish the degradation a prisoner suffers when needlessly paraded about a courtroom, like a dancing bear on a lead, wearing belly chains and manacles." *United States v. Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) (Cardamone, J., concurring).

### III. CONCLUSION

In sum, the magistrate judge did not clearly err in denying Williams's motions to unshackle his hands at his initial hearings, so Williams's objection will be overruled. But insofar as this court retains primary jurisdiction over Williams and the disposition of his pending criminal case, it will order that both of his hands be unshackled at all future proceedings. Of course, the court may, in its discretion, order that a defendant's hands remain shackled, but it should do so only after careful consultation with the U.S. Marshals and after consideration of relevant factors related to the defendant's potential dangerousness and risk of escape.[8] The court will also follow this policy with respect to all criminal defendants on its docket and direct the assigned magistrate judge handling non-dispositive matters in these cases to do the same.

The Clerk is directed to forward a copy of this Order to all counsel of record.

**ENTERED** this 7th day of June, 2024.

_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[8] Although the Marshals shall remove the defendant's handcuffs prior to the start of every hearing, the belt harness and leg restraints may remain in place for the duration of the hearings.